IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH BRADEN,              )
                               )  No. 08-574
     Plaintiff,          )
                               )
     v.

COUNTY OF WASHINGTON and
THE COURT OF COMMON PLEAS OF
WASHINGTON COUNTY, PENNSYLVANIA,

     Defendant.

## OPINION AND ORDER

### SYNOPSIS

     In this civil action, Plaintiff claims that the Defendant County retaliated against her for her taking leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2), and interfered with her FMLA rights, 29 U.S.C. §2615(a)(1).   Specifically, Plaintiff avers that she was a joint employee of the Defendant and the Court of Common Pleas of Washington County ("County Court"), and took FMLA leave for a serious medical condition.  She was subsequently discharged, allegedly for unsatisfactory attendance.  The County Court has been found immune from Plaintiff's FMLA claims.

     Before the Court is the County's Motion for Summary Judgment, which seeks judgment on grounds that Plaintiff was not its employee, and was instead solely employed by the County Court.  Therefore, Defendant contends, it cannot be held liable under the FMLA.   In addition, Defendant argues that even if it is deemed Plaintiff's employer, it did not violate her FMLA rights as a matter of law.

Plaintiff has filed a cross-Motion for Summary Judgment, seeking a judgment that the County is liable under the FMLA as her employer, and violated her FMLA rights as a matter of law.

For the following reasons, Plaintiff's Motion will be denied, and Defendant's granted in part.

**OPINION**

## I.  Applicable Standards

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion.  <u>International Raw Materials, Ltd. V. Stauffer Chem . Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  <u>United States v. Onmicare, Inc.</u>, 382 F. 3d 432 (3d Cir. 2004).  Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

## II. FACTS

In this case, the focus is on the relationship between Defendant and the Domestic Relations Section ("DRS") of the County Court, vis-a-vis Plaintiff's

employment.    Unless otherwise indicated, the following background facts are undisputed.

Plaintiff submitted to the County Human Resources Office an application for employment with the of the Court of Common Pleas of Washington County. Plaintiff interviewed with the Director of DRS, and a County HR employee was present at the interview.  Plaintiff was hired in a position at DRS.  The Director of DRS told Plaintiff that she was being employed in a court-related office, and that she was a Washington County employee.  In the DRS, she was supervised by DRS Deputy Director, who was supervised by the DRS Director, who was in turn supervised by the Court Administrator, who was in turn supervised by the DRS Judge, who was in turn supervised by the President Judge of the Court of Common Pleas.[1]    The President Judge of the County Court has the authority to hire and fire people.

Plaintiff received her day-to-day work assignments from the Director or

---

[1]In another action in this Court, <u>Ward v. Washington County</u>, 4-1420, the plaintiff in that case, who was the present Plaintiff's direct supervisor at DRS until 2004, alleged in her complaint that she was "an employee" of Defendant.  In its Answer in that action, the County admitted that allegation.  Presently, the County asserts that the admission was an error of oversight, and was not consistent with its summary judgment argument in <u>Ward</u> and this case.   The purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (citations omitted). Plaintiff proffers no discussion regarding how judicial estoppel might apply in this matter. In any event, Plaintiff reported to another supervisor, regarding whom no such admission was made, from 2004 until the time of her discharge in December of 2007.

I also take note of Plaintiff's contention about the significance of Defendant's participation in the role of employer at Plaintiff's unemployment compensation hearing.  As one court has stated in a different context, "the unemployment compensation process is completely unrelated to an employer's liability" under the FMLA.  <u>Sanford v. Main St. Baptist Church Manor, Inc.</u>, No. 6-187, 2007 U.S. Dist. LEXIS 39453, *15-16 (E.D. Ky. May 30, 2007); <u>see also</u> <u>Moldenhauer</u>, 2006 U.S. Dist. LEXIS 93896, at *28 (employer listed on unemployment compensation documents not joint employer). Defendant's participation in that process is not entitled to great weight on the issue of FMLA status.

Deputy Director of DRS.   The County Court adopted, followed, or borrowed certain policies of the County, such as those relating to aspects of vacation, sick leave, and the FMLA, and DRS has certain of its own policies, such as a dress code and political activity policy.   Salary increases were approved by the Defendant, and Defendant paid Plaintiff's salary and provided her employee benefits.[2]  There is no evidence that Defendant made, as opposed to approved, decisions about Plaintiff's compensation.

In October of 2007, Plaintiff received a written warning and a three-day suspension for missing work.  The DRS Director told Defendant's HR Director that they were going to issue a written warning, and asked the opinion of the HR Director, who recommended the written warning.[3]  Due to Plaintiff's continued absenteeism, the DRS Director and Deputy Director recommended that the Deputy Court Administrator terminate Plaintiff.  The Deputy Court Administrator also talked to the Defendant's HR Director, who recommended that the Deputy Court Administrator fire Plaintiff. The Deputy Court Administrator, DRS Director, and DRS Deputy Director met with Plaintiff to discuss her absences, and whether she should be terminated.  The decision to terminate Plaintiff was made by the Deputy Court Administrator.  The Deputy Court Administrator then fired Plaintiff in 2007.

---

[2]Pennsylvania law requires that each individual county maintain a judicial account, and pay the salaries and expenses of the court system within that county.  Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997).

[3]The evidence regarding the suspension shows that the DRS Director intended to have Defendant's HR Director review Plaintiff's suspension letter.  Plaintiff points to no additional evidence of Defendant's involvement in the suspension.

## III.  THE PARTIES' MOTIONS

### A.    Does FMLA liability require that Defendant be Plaintiff's employer, or merely "an" employer?

First, I address Plaintiff's threshold argument that Defendant needn't be her employer -- it merely needs to be an employer -- in order to be liable to her under the FMLA.

Plaintiff, appearing to concede that Defendant must be her employer in order to sustain interference liability under the FMLA, does not attempt to buttress her interference claim in this regard.  Indeed, to succeed on a FMLA interference claim, a plaintiff must demonstrate that she was entitled to and denied some benefit under the FMLA . See Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006); Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 570-71 (M.D. Pa. 2004).  "An interference action...is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Callison v. City of Philadelphia, 430 F.3d 117, 119-20 (3d Cir. 2005). Accordingly, a non-employee is not entitled to FMLA leave, and cannot state a claim for denial of a benefit only available to an employee. Hayduk v. City of Johnstown, 580 F. Supp. 2d 429 480 (W.D. Pa. 2008); Dvorak v. Mostardi Platt Assocs., 289 F.3d 479 (7th Cir. 2002).

As this Court has stated, "to be an eligible employee under the Act, a person must first be employed by the employer against whom he seeks to assert the right."  Hayduk, 580 F. Supp. 2d at 472 (citing 29 U.S.C. § 2611(2)(A), (3)).  These principles suggest that absent an employment relationship between an employer

and an FMLA claimant, the claimant is not entitled to any benefit from the employer.  Therefore, she cannot sue the employer for interfering with that benefit.  I will proceed under the assumption that Defendant must be Plaintiff's employer in order to support FMLA liability for interference.[4]

Plaintiff, however, argues that she may maintain an FMLA retaliation claim against an entity that is not her employer.  At first glance, the FMLA and correlating Department of Labor ("DOL") regulations appear to support her argument.[5]   Plaintiff anchors her retaliation claim in 29 U.S.C. § 2615(a)(2), which makes it illegal for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."  The related regulations, on which Plaintiff relies, use the term "individual" rather than employee, and specify that employee status is not required.[6]   Accordingly, Plaintiff argues, these provisions permit suit even if Defendant is not <u>her</u> employer.

The United States Court of Appeals for the Third Circuit, however, has held

---

[4]"Employer" is also "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(I).  Plaintiff makes passing reference to this regulation, but does not offer supporting authority nor fully explain how Defendant acted "in the interest" of the County Court in this case.

[5]Regulations are not binding, but "courts owe deference to an agency's interpretation of the statute and regulations it administers." <u>NVE, Inc. v. Dept. of Health and Human Servs.</u>, 436 F.3d 182, 186 (3d Cir. 2006).

[6]Specifically, the regulation states that an employer is prohibited from "discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the [FMLA]."  29 C.F.R. § 825.220.  The regulation further states that  "Individuals, and not merely employees, are protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful under the Act."  <u>Id.</u> at § 825.220(e).

that these provisions are inapplicable to claims such as those raised in this case.[7]

In cases such as this one -- in which the plaintiff's retaliation claim is predicated solely on discharge because she took FMLA leave, rather than because she opposed an unlawful practice -- liability is not predicated on Section 2615(a)(2), or the regulations implementing that Section. See, e.g., Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146-47, n.9 (3d Cir. 2004); Lynch v. Robertson, No. 2005-201, 2007 U.S. Dist. LEXIS 60835, at **72-73 (W.D. Pa. Aug. 17, 2007).   Instead, our Court of Appeals has found that in such a case, liability is to be predicated on 29 C.F.R. § 825.220(c), which it viewed as implementing the interference provisions of FMLA Section 2615(a)(1).  Conoshenti, 364 F.3d at 146-147, n. 9; Lynch, 2007 U.S. Dist. LEXIS 60835, at *73-74 (discussing Conoshenti).

Accordingly, I must turn to the retaliation provision of Section 825.220(c). That Section, unlike those on which Plaintiff relies, does not address non-employees, or use the phrase "individual."   To the contrary, it reads, rather straightforwardly, as follows:

> The Act's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights....employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions....

---

[7]Appellate courts disagree about whether such a retaliation claim should be based on Section 2615(a)(1) or (a)(2), but our Court of Appeals has spoken clearly on the issue.  See, e.g., Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325 (1st Cir. 2005) (discussing cases); Lynch, 2007 U.S. Dist. LEXIS 60835 (discussing cases).

29 C.F.R. § 825.220(c).[8]

The appropriate premise for Plaintiff's retaliation claim, therefore, suggests absolutely no grounds for dispensing with the employment relationship.  Instead, it clearly requires the presence of an employer and a current or prospective employee, and presupposes an employment relationship in which "employment actions" are possible.

Additionally, Plaintiff points to no case in which these provisions have been applied to a situation divorced from an employer/employee relationship.  Instead, courts have consistently proceeded under the assumption that a "retaliation" claim of this type requires an employment relationship between the parties.  For example, this Court has provided the following formulation of the relevant prima facie case:  "To prove FMLA retaliation, an employee must show that his [or her] employer intentionally discriminated against him [or her] for exercising an FMLA right."  Mascioli v. Arby's Rest. Group, Inc., 610 F. Supp. 2d 419, 433 (W.D. Pa. 2009) (emphasis added) (addressing a claim under Section 825.220(c)).  In sum, Plaintiff's FMLA "retaliation" claim requires that she was employed by Defendant.

### B.  Was Defendant one of Plaintiff's joint employers?

Having determined that Defendant must be Plaintiff's employer in order

---

[8]At the time Conoshenti was decided, the text of Section 825.220(c) read as follows:

An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave....By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions....

The substantive import of the analysis remains the same under either version of the regulation.

to sustain FMLA liability, I must next consider whether Plaintiff was jointly employed by Defendant and the County Court.  The "joint employer" concept imposes liability when two distinct employers share some control over the employee.  See 29 C.F.R. § 825.106(a); Carstetter v. Adams County Transit Auth., No. 6-CV-1993, 2008 U.S. Dist. LEXIS 51874, at *32, n. 11  (M.D. Pa. July 8, 2008).[9]

In the regulations implementing the FMLA, joint employer coverage is addressed by 29 C.F.R. § 825.106.  Under that Section, an individual may be a joint employee of two entities under the following circumstances:

> (a) where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;

> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,

> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

> (B)(1) A determination of whether or not a joint employment relationship exists is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality.

29 C.F.R. § 825.106.

---

[9] A joint employer is distinct from an integrated employer.  The concept of an "integrated employer" imposes equal liability when two entities function as a single operation for FMLA purposes.

I share the lament of several colleagues regarding the relatively undefined boundaries of FMLA joint employment, which stems from the lack of caselaw on the issue and the bare guidance supplied by the regulation itself.  E.g., Miller v. County of Rockingham, No. 5:06cv00053, 2007 U.S. Dist. LEXIS 58157, at *28 (W.D. Va. Aug. 9, 2007).

### 1.    Does the FMLA joint employer provision apply to public agencies?

Before reaching the issue of Defendant's status, I must address its contention that the joint employer test, set forth above, applies solely to private companies, and not public agencies, and is thus inapplicable here.   Defendant's argument rests entirely on the first two sentences of Section (a), and the use of the words "businesses" and "owners."   Because a public agency is not a "business" and has no "owner, it argues, a public agency cannot qualify as a joint employer.

I reject this argument.  Even assuming that the first two sentences of Section (a) apply only to private concerns, which is a finding that I do not make here, there is absolutely no suggestion that the remaining portions of the regulation are likewise restricted.   Following the two sentences in question, the remainder of Section 825.106 uses the term "employer."  The following principles apply to that term:

> Under the FMLA, "[t]he term 'employer' . . . includes any 'public agency', as defined in [29 U.S.C. §] 203(x)," as well as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer . . . ." 29 U.S.C. § 2611(4)(A)(ii)(I), (iii). A "public agency" is defined, inter alia, as "the government of a State or political subdivision thereof . . . ." 29 U.S.C. §§ 203(x), 2611(4)(A)(iii).

Hayduk, 580 F. Supp. 2d at 476.

Under the plain language of the regulation, therefore, the provisions that refer to an "employer" facially refer to public as well as private entities.  The sentences that appear to refer solely to private entities may do so without altering the meaning of the broader term "employer," as used in the regulation. There is no reason that a regulation cannot identify principles particular to private entities, in the context of a more inclusive pronouncement.  To interpret Section 825.106 otherwise would require reading the word "employer" in a manner contrary to its  definition.  Indeed, Courts have applied this Section – as it pertains to "employers"-- to public entities. E.g., Moldenhauer v. Tazewell Pekin Consol. Communs. Ctr., 536 F.3d 640 (7th Cir. Ill. 2008); Carstetter, 2008 U.S. Dist. LEXIS 51874;  County of Rockingham, 2007 U.S. Dist. LEXIS 58157.

Moreover, as Defendant points out, the joint employer portion of the Fair Labor Standards Act ("FLSA") mirrors that of the FMLA and is often used to support interpretations of the FMLA, and the FLSA joint employer test clearly applies to public agencies.[10]   Defendant asserts that the Department of Labor incorporated joint employer portions of the FLSA, but added only the "business" and "owner" sentences now at issue.  This, however, may suggest an intention to retain intact the public agency application, with additional information particular to private enterprise, as opposed to an intention to dispense altogether with public agency application.  If the DOL intended the latter, it could have replaced the word "employer" with a word that did not include public agencies – such as,

---

[10]"The joint-employer regulation in the FLSA mirrors that in the FMLA, compare 29 C.F.R. § 825.106(a) with 29 C.F.R. § 791.2(b), and thus it makes sense for us to use this standard to govern the FMLA." Moldenhauer v. Tazewell Pekin Consol. Communs. Ctr., 536 F.3d 640 (7th Cir. Ill. 2008).

potentially, "business"-- but it did not do so.   I have found no case, and
Defendant points to none, in which a court has restricted Section 825.106 to
private entities, or refused to apply it to a public agency.  In the utter absence of
authority to the contrary, I decline to subvert the plain usage of a defined term.

 In addition, beyond Section 825.106 itself, the regulations as a whole
contain no suggestion that public agencies are to be excluded from joint
employer liability.  As Defendant points out, the Department of Labor created
separate "integrated employer" regulations for public and private entities, but
only one "joint employer" regulation.   According to Defendant's reading, the lack
of a separate public agency joint employer test evinces a deliberate choice not to
permit joint employer status for such agencies.   The state of the regulations,
however, might just as likely evince a deliberate choice to create a single,
inclusive test for joint employer status.

 I can conceive of no reason, and Defendant points to none, why the
Department of Labor might seek to impose on public agencies integrated
employer status, and subject them to FMLA liability in other respects, but exclude
them from the possibility of joint employer status.   While Defendant argues that
joint employer status threatens the state separation of powers, and that
restricting joint employment lends certainty to the law, the same is true for
integrated employer status.  These possibilities are not reason enough to read
the regulations as Defendant urges.  I do not here engage in constitutional
scrutiny of Defendant's relationship with the state court system; I engage only in
the analysis pertinent to determining Defendant's FMLA obligations.   In sum, I

find that the joint employer test set forth in 29 C.F.R. § 825.106 applies to

Defendant.

### 2.    Was Defendant Plaintiff's joint employer?

Having determined that Defendant is subject to joint employer analysis

under the FMLA, I next address Plaintiff's assertion that she was, in fact,  jointly

employed by Defendant and the County Court.  It is possible, under appropriate

circumstances, for the County Court and Defendant to be joint employers:

> In Pennsylvania, the courts are the employers of judicial personnel.
> The domestic relations section is a statutorily prescribed division of the
> Court of Common Pleas, and  is not a County agency. In instances where the
> state trial court and the county both exercise significant control over the
> same employees, the county may be considered a co-employer with the
> court.

Walters v. Washington County, No. 6-1355, 2009 U.S. Dist. LEXIS 23739, at **27-28
(W.D. Pa. Mar. 23, 2009) (ADEA and PHRA case) (citations omitted).

Joint employment is to be assessed in light of the totality of the

circumstances. 29 C.F.R. § 825.106(b)(1);  Carstetter, 2008 U.S. Dist. LEXIS 51874, at

*34.  This Court has stated that the relevant analysis includes factors such as

whether the alleged employer had the power to hire and fire the employees,

supervised and controlled employee work schedules or conditions of

employment,  determined the rate and method of compensation, and

maintained employment records.  Carstetter, 2008 U.S. Dist. LEXIS 51874, at *34.

See also Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469-1470

(9th Cir. 1983); Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st

Cir. 1998).[11]

Others have endorsed a more general "test," that "for joint employment to exist, each alleged employer must exercise some control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of the case."   Moldenhauer v. Tazewell Pekin Consol. Communs. Ctr., 536 F.3d 640, 644 (7th Cir. Ill. 2008).  Regardless of the specific approach taken, the majority of courts, consistent with the language of Section 825.106, have emphasized control over the employee's daily activities and working conditions, as opposed to administrative-type involvement with the employee. [12]

---

[11]Our Court of Appeals has set forth a six factor test to be used when assessing whether an employment relationship exists, generally.  Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985).  This test has been applied in the FMLA context, and in the FLSA context, but not to FMLA joint employment in particular.  Siko v. Kassab, Archbold & O'Brien, No. 98-402,  1998 U.S. Dist. LEXIS 12153 (E.D. Pa. Aug. 4, 1988).  To the extent the six-factor test can be applied here, however, it leads to the same result.

Other courts have applied a six-factor test to joint employment under the FMLA; that test, however, is most appropriate in the context of alleged independent contractors and subcontractors.  See, e.g.,  Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61 (2d Cir. 2003).  To the extent that the factors of such a test are applicable here, however,  the approach is consistent with the four-factor approach I take today.

[12]  I do take note of EEOC v. Blast Intermediate Unit, 677 F. Supp. 790, 792-93 (M.D. Pa. 1987), in which the Court found that an intermediate unit ("IU"), responsible for special education, was a joint employer with the Commonwealth for FLSA purposes.  This was true, although the Commonwealth "had no direct control over the operation, hiring and employment policies of [IU] and that control of [IU]'s day-to-day operation was vested in its executive director and board of directors..." Id. at 792.  The Court concluded that the two defendants were joint employers, because special education was an integral function of the Commonwealth; the Commonwealth was responsible for establishing the IU, and issuing regulations and guidelines for the IU; the Commonwealth benefitted from the work of the IU; and the Commonwealth provided state funds for the IU's operation.  Id. at 792-93.  Here, the Defendant and the County Court share no such unique relationship that would justify a finding of joint employment, absent day-to-day control over Plaintiff.

I further note that Section 825.106 specifically addresses companies that contract with client employers to perform administrative functions.  29 C.F.R. § 825.106(b)(2).  Under that regulation, such a company is not a joint employer if it performs merely administrative functions; it may be a joint employer, however, if it has the right to hire, fire, assign, or direct and control the client's employees, or benefits from the employees' work.  Id.  Although this regulation is inapplicable to the present facts, it further supports the proposition that day-to-day control, as

In support of her position in favor of joint employment, Plaintiff points primarily to Defendant's involvement in payroll and benefits administration,[13] the Defendant's presence during the hiring process, the fact that Defendant's HR provided support to court-related employees, that DRS followed or adopted certain County policies, and finally – a fact identified by Plaintiff as most important -- that Defendant recommended that Plaintiff be suspended, written up, and fired.

In the recent FLSA case of Spears v. Choctaw County Comm'n, No. 7-275, 2009 U.S. Dist. LEXIS 66037, at *33 (S.D. Ala. July 30, 2009), the court considered similar facts and determined that there was no joint employment relationship under the FLSA.  In that case, absent involvement in the employee's daily activities and the power to hire or fire the employee, a county was not a joint employer, even though the county handled administrative functions regarding payroll and benefits; maintained employment records; and could approve or disapprove of a decision to hire or fire.  Id. at **33-34.  In reaching its conclusion, the court observed a lack of precedent "in which a court decided that an entity that was completely uninvolved in the day-to-day activities of a plaintiff...was an 'employer' based only on its involvement in setting salary classifications and

---

opposed to administrative involvement, lies at the heart of the joint employment question.

[13]Some DRS employees were paid by the County, and others by the Commonwealth of Pennsylvania.  There is no evidence that the County Court paid any DRS employees.

handling benefits and payroll." Id. at *33.[14]   Similarly, in Moldenhauer, an FMLA case, the court determined that there was no joint employment relationship, although the plaintiff was considered an employee of the purported joint employer for purposes of payroll, worker's compensation, retirement benefits, and was listed as such on her W-2 forms.  Id. at 645-46.

Here, there is no evidence that Defendant maintained direct or indirect control over Plaintiff's work schedules or working conditions, determined (rather than approved) the rate and method of her compensation, or had the power to determine, or take action, to hire or fire her.[15]  There is no evidence that Plaintiff or her  supervisors reported to, or received direction or supervision from, Defendant.  To the contrary, the "chain of command" ended at the President Judge of the County Court.  It is also undisputed that the DRS Deputy Director and Director gave Plaintiff her work assignments.  The evidence shows that the DRS or Court adopted certain of Defendant's policies; there is no evidence that Defendant was empowered to impose or enforce those policies against DRS workers.[16]  DRS supervisors conducted regular evaluations of Plaintiff's work.  In sum, there is absolutely no evidence that Defendant had any involvement in or

---

[14]More simply put, "[a]n entity with no direct involvement or control of an individual's actual work is not likely to be deemed a joint-employer [under the FMLA]."  Maria Greco Danaher, DOL Issues Regulations for Joint-Employer Liability, 10 Lawyers J. 2 (Oct. 10, 2008).

[15]An employer may be a joint employer under the FLSA even if it does not hire and fire, directly dictate hours, or pay the employees.  Zheng, 355 F.3d at 72.  Zheng, an FLSA case, also noted that under such circumstances, "functional control" might suffice in the absence of "formal control."  In this case, however, there is no evidence that Defendant exercised functional control over Plaintiff.  Moreover, the test referred to in Zheng is not adaptable to the present situation, because it deals with contractors and subcontractors.

[16]Additionally, the DRS Director created the vacation and sick time request policy within DRS.

control over Plaintiff's day-to-day work activities, or controlled the essential details of her employment.  As the case law indicates, funding, and salary and benefits handling, are relevant but not enough.

Plaintiff also relies on the fact that she was told and otherwise led to believe that she was Defendant's employee – for example, her employment application read, "Washington County" at the top.  Joint employer status, however, does not turn on the perceptions of the employee.   Cf. Martin v. Purolator Courier, No. 94-1004, 1996 U.S. Dist. LEXIS 22300, at *12 (E.D. N.Y. July 30, 1006); McGrath v. Gillis, 44 F.3d 567, 572 (7th Cir. 1995).[17]  Similarly, providing human resource support is akin to an administrative function, and is not an exercise of the requisite control.  Cf. Horan v. Sears Roebuck & Co., No. 7-1582, 2009 U.S. Dist. LEXIS 90924, at *12 (D. Conn. Sept, 28, 2009); Halseth v. B.C. Towing, Inc., No. 4-795, 2006 U.S. Dist. LEXIS 35790, at **5-6 (D. Or. Feb, 3, 2006).[18]  Lastly, Plaintiff proffers no authority, and I find none, to support the proposition that coordinated litigation defense should be a factor in the joint employment analysis.   Neither a defendant's conduct during a lawsuit or a defendant's name on personnel documents equates to the exercise of control over the employee, which is the sine qua non of joint employment, according to applicable regulations and precedent.

"To reach [the conclusion that there was no joint employment], the Court

---

[17]While Martin is a Title VII case, and I do not import Title VII standards into the present context, the FMLA joint employment standards are devoid of suggestion that the applicable analysis is anything other than objective.

[18]Horan, considering joint employment under the ADEA, applied factors similar to those used in Carstetter and Bonnette under the FMLA.

need not decide that <u>every</u> factor weighs against joint employment." <u>Zheng v.</u>

<u>Liberty Apparel Co.</u>, 355 F.3d 61, 76-77 (2d Cir. N.Y. 2003) (emphasis in original).

Certainly, the Defendant and County Court are interrelated in certain respects.

To recite the test urged by Plaintiff, however, there is simply insufficient

evidence that Defendant "exercised the requisite control over [Plaintiff's] daily

employment activities...to incur liability as a co-employer." <u>Graves v. Lowery</u>, 117

F.3d 723, 727 (3d Cir. 1997).[19]   Viewing the facts in the light most favorable to

Plaintiff, the great weight of the factors present militate against a finding, as a

matter of law, that Plaintiff was employed by Defendant.

### C. Is Defendant subject to liability as Plaintiff's integrated employer?

Plaintiff mentions, in passing and in a footnote, that she believes that

Defendant may be an integrated employer, but that factual issues remain

outstanding.   In turn, Defendant argues that it cannot be an integrated

employer, because the FMLA regulations refer to state law, which in turn

mandates that it is a separate entity from the Court.  Plaintiff does not directly

address Defendant's position on the integrated employer regulation, but instead

argues that state law does not exempt Defendant from <u>joint</u> employer status.

On the subject of integrated employer status, therefore, Plaintiff and Defendant

call to mind the proverbial ships in the night.  For this and various other reasons,

I am presently unable to rule on whether Defendant and the County Court were

integrated employers within the meaning of the FMLA.

---

[19]<u>Graves</u> addressed Title VII.  The quoted statement, however, on which Plaintiff herself
relies, accurately emphasizes the FMLA's core concern of control over Plaintiff's daily employment
activities.

In mounting its argument, Defendant cites to Rollins v. Wilson County Gov't, 154 F.3d 626, 629 (6th Cir. 1998).  Rollins considered 29 C.F.R. § 825.108(c)(1), which stated that "[w]here there is any question about whether a public entity is a public agency, as distinguished from a part of another public agency, the U.S. Bureau of the Census' 'Census of Governments' will be determinative..."  Id. at 629.  The Rollins court decided that, prior to referring to the Census, a court should examine state law to determine whether there is "any question."  Id.[20]

The regulation referred to in Rollins, however, has been amended.  29 C.F.R. § 825.108(c)(1) now provides, in pertinent part, as follows:

> A State or a political subdivision of a State constitutes a single public agency and, therefore, a single employer for purposes of determining employee eligibility. For example, a State is a single employer; a county is a single employer; a city or town is a single employer. Whether two agencies of the same State or local government constitute the same public agency can only be determined on a case-by-case basis. One factor that would support a conclusion that two agencies are separate is whether they are treated separately for statistical purposes in the Census of Governments issued by the Bureau of the Census, U.S. Department of Commerce.

Clearly, the amendments might affect whether the approach taken in Rollins remains viable.  The parties have not, however, briefed whether this amendment is to be retroactively applied.  See generally  Porcillo v. Vistar Corp., No. 8-1090, 2010 U.S. Dist. LEXIS 8143, at * (M.D. Fl. Feb. 1, 2010).   Likewise, the parties have not addressed whether the integrated employer test for public agencies supersedes the integrated employer test found at 29 C.F.R. § 825.104(c)(2), or is instead to be read in conjunction with that test.  This issue

---

[20]See also  Fain v. Wayne County Auditor's Office, 388 F.3d 257 (7th Cir. 2004).

remains unsettled.  See  Nielson v. Port of Gold Beach, No. 5-3095, 2007 U.S. Dist.

LEXIS 61061, at **6-7 (D. Or. Aug. 16, 2007); County of Rockingham, 2007 U.S. Dist.

LEXIS 58157, at *21.   Because of their centrality to this case, justice requires that I

decline to consider these questions sua sponte, without input from the parties.

Defendant's Motion as regards integrated employer status will be denied,

without prejudice.

### D. Did Defendant violate Plaintiff's FMLA rights?

As a final matter, the parties have filed cross-motions seeking judgment as

a matter of law on the issue of whether Defendant violated Plaintiff's FMLA

rights.  At this point, when it is has not been determined that Defendant may be

held liable under the FMLA as Plaintiff's employer in the first instance, I will not

address the alleged violations.  To do so would be highly inefficient, and a waste

of judicial resources.  I will, therefore, deny that aspect of the Motions as

premature.[21]

### CONCLUSION

In sum, in order to sustain FMLA liability on Plaintiff's Complaint, Defendant

must have been her employer.  Plaintiff has failed to demonstrate that she is

entitled to judgment as a matter of law that Defendant was her joint employer.

In contrast, there is no genuine issue of material fact that Defendant was not

Plaintiff's joint employer, under applicable standards, and is entitled to judgment

---

[21]Plaintiff's Motion seeks judgment on the issue that she was an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2).  Defendant does not oppose that argument.  If it is ultimately determined that she was Defendant's employee, Plaintiff will be entitled to judgment to that extent.  To the extent that her eligibility is intertwined with the parties' arguments regarding whether a violation occurred, however, the Motion is premature.

in its favor on that issue.  I decline, however, to grant summary judgment on the issue of whether Defendant can be held liable as Plaintiff's integrated employer. With that issue outstanding, I will not now consider whether either party is entitled to judgment regarding whether an FMLA violation occurred.  The parties will be afforded an additional opportunity to raise these issues on summary judgment.   An appropriate Order follows.

**ORDER**

AND NOW, this 23rd day of April, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's is GRANTED in part, to the extent that it is decreed that Defendant is not Plaintiff's joint employer within the meaning of the FMLA.  The remainder of the Motions are DENIED, as stated in the body of the accompanying Opinion, without prejudice.

If Defendant wishes to file an additional Motion for Summary Judgment, consistent with the accompanying Opinion, it may do so within fifteen (15) days from the date of this Order.   Plaintiff may respond within fifteen (15) days thereafter.   When the issue of employer status is resolved, the Court will revisit the issue of whether a violation occurred, if necessary.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, United States District Court