## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DEBORAH BRADEN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | No. 8-574 |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF WASHINGTON, et al., | ) | |
| | ) | |
| Defendant | ) | |

## OPINION AND ORDER

### SYNOPSIS

In this civil action, Plaintiff asserts claims against the Defendant County for

violating her rights to be free of retaliation and interference under the Family

Medical Leave Act, 29 U.S.C. 2615(a)(2) and (a)(1) ("FMLA"). At the time of her

discharge, Plaintiff worked as a Paternity/IRS Coordinator in the Domestic

Relations Section ("DRS") division of the Court of Common Pleas of Washington

County ("County Court"), at the time of the alleged violations. Previously, by

Opinion and Order dated April 23, 2010 ("April 23 Opinion"), I granted summary

judgment in Defendant's favor, in part. At that time, I determined that

Defendant was not Plaintiff's "joint employer," but left open the issue of whether

Defendant could be considered Plaintiff's "integrated employer," and whether

the facts established an underlying FMLA violation. In addition, I found that

Plaintiff's retaliation claim was based on discharge in retaliation for taking FMLA

leave, as opposed to discharge in retaliation for opposing an unlawful practice.

Thus, the claim requires that Defendant and Plaintiff must have had an

employment relationship for liability to attach.

Defendant has filed a supplemental Motion for Summary Judgment addressing the issues left open in that Order.  For the following reasons, after careful consideration of the record and the parties' submissions, the Motion will be granted.[1]

## OPINION

### I.  Summary Judgment Standard

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  Celotex Corp. v. Cattrett,

---

[1]Because the facts have been fully developed in connection with prior summary judgment motions filed in this proceeding, I do not now separately set forth the facts on which I rely. Instead, they are identified, as they become pertinent, throughout the Opinion. Plaintiff does not now take issue with the undisputed facts as found in connection with the prior summary judgment motions.

2

477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The non-moving party must "set out specific facts" demonstrating that a genuine issue for trial exists. Fed. R. Civ. P. 56.

## II. "Opposition" Retaliation Claim

I first address Plaintiff's threshold argument regarding whether her retaliation claim requires that Defendant be her - rather than "an" - employer. In my April 23, 2010 Opinion, I noted that Plaintiff alleged discharge in retaliation for taking FMLA leave. Accordingly, I stated that her claim is properly anchored in 29 C.F.R. § 825.220(c), which addresses retaliation for exercising an FMLA right, rather than 29 U.S.C. § 2615(a)(2), which addresses retaliation for opposing a practice made unlawful by the FMLA. As discussed in the April 23, 2010 Opinion, liability under the latter requires that Defendant be Plaintiff's employer, but there is no such explicit requirement under the former.[2] Plaintiff now contends that an employer-employee relationship is not required, because she claims that she was terminated for opposing an unlawful practice, and thus falls within Section 2615(a)(2).

Previously, in characterizing Plaintiff's claim as falling within Section 825.220(c), I reviewed all of Plaintiff's factual allegations and arguments from the

---

[2]29 U.S.C. § 2615(a)(2) states that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 C.F.R. § 825.220(a)(2) reads, "an employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the [FMLA]." Thus, these provisions suggest that an aggrieved plaintiff need not have been employed by defendant in order to sustain a claim. In contrast, 29 C.F.R. § 825.220(c) prohibits "an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights...."

3

Complaint up through summary judgment. Plaintiff's retaliation claim reads as

follows:

COUNT I
Family and Medical Leave Act
19 U.S.C. §2615(a)(2)
Retaliation

11. Plaintiff incorporates by reference the allegations in paragraphs 1 through 10 as if fully stated herein.

12. As described in detail above, Braden is an eligible employee as defined by the FMLA, and she took FMLA for a serious health condition. Therefore, Braden exercised her rights under the FMLA.

13. The FMLA, 29 U.S.C. §215(a)(2) [sic], precludes employers from retaliating against employees who have exercised rights under the FMLA.

14. Defendant fired Braden in retaliation for her exercise of her rights under the Family and Medical Leave Act, in violation of 19 U.S.C. §2615(a)(2). Therefore, Defendant violated the FMLA. As a direct and proximate result of Defendant's violations of the FMLA, Braden has suffered and continues to suffer damages....

Plaintiff's Complaint clearly marks her claim as one based on retaliation for

the exercise of FMLA rights, identifies the exercise of those rights as Plaintiff's

taking of FMLA leave, and identifies the retaliatory act as her discharge.

Moreover, Plaintiff's Complaint simply does not assert any facts that could

reasonably be construed as raising an "opposition" claim. The short factual

background that the Complaint recites, which is incorporated by reference into

her retaliation claim, avers that Plaintiff took family and medical leave, which was

approved as FMLA leave, and that she was then fired. The Complaint is devoid of

any mention of "opposition" retaliation, and contains no factual averments that

Plaintiff opposed or purported to oppose any of Defendant's conduct or

practices, or was subject to retaliation as a result.

Moreover, Plaintiff's stance throughout the course of the litigation has

4

been consistent with the unambiguous parameters of her Complaint. In
response to Defendant's Motion for More Definite Statement, for example,
Plaintiff argued that she had adequately pleaded a claim of retaliation, because
she pleaded that the Defendant fired her for FMLA-covered absences. Again, in
opposition to summary judgment, Plaintiff referred only to the factual
allegations that she was fired for taking FMLA leave; there is no suggestion, in her
summary judgment papers, that she intends her claim to rest on actions taken in
opposition to an unlawful practice. In sum, since the inception of this litigation,
Plaintiff has repeatedly and consistently approached her claim as one of
discharge for exercising her FMLA rights, rather than opposing a practice made
unlawful under the FMLA.[3] At no time during the pendency of this matter, in
which discovery has concluded, was Defendant fairly placed on notice that
Plaintiff intended to rely on an "opposition" theory of liability.[4] At this late
stage, I cannot permit action that is akin to amending a complaint. Cf. Bell v. City
of Phila., 275 Fed. Appx. 157 (3d Cir. 2007).[5]

---

[3]Plaintiff asserts that she did not raise this issue in opposition to Defendant's initial
summary judgment motion, because Defendant did not raise it. Defendant did, however move for
judgment on the entirety of the Complaint, and discussed the retaliation claim. Quite possibly,
Defendant did not discuss an "opposition" retaliation claim because the facts pleaded did not place
them on notice that Plaintiff intended to pursue such a claim. In any event, Plaintiff's concern that
this Court's sua sponte analysis deprived her of the opportunity to brief this issue is alleviated,
because she has now fully briefed the issue and its substance will be considered.

[4]An interpretation of Section 2615(a)(2) as protecting against retaliation for taking FMLA
leave is not unreasonable, as several courts have taken that approach. As discussed in my April 23
Opinion, however, I am bound by our Court of Appeals' determination that such claims are
appropriately brought pursuant to 29 C.F.R. § 825.220(c), which implements Section 2615(a)(1) rather
than (2).

[5]In Bell, the Plaintiff asserted that he suffered retaliation for his exercise of the First
Amendment rights of free speech and free association. Later, in response to summary judgment,

I will assume arguendo, however, that Plaintiff's Complaint can be deemed to encompass a cause of action under an "opposition" theory, and will address her position that she has adduced sufficient evidence to avoid summary judgment on that claim. Such a claim requires, inter alia, that Plaintiff demonstrate that she engaged in protected activity. Marra v. Philadelphia Housing Auth., 497 F.3d 286, 300 (3d Cir. 2007). In support of her position, Plaintiff relies on two alleged instances of protected oppositional activity. First, on October 2, 2007, Plaintiff received a written warning after used vacation time. The written warning refers to the use of non-approved vacation days, sick time, and ongoing attendance problems. Plaintiff signed the written warning, and wrote the date October 2, 2007, along with the words, "under protest, due to medical condition."

Second, after Plaintiff missed work from October 15-18, 2007, Plaintiff was given a memorandum, dated October 19, 2007, informing her that she would be suspended for three days. The memorandum referred to a failure to follow office policy regarding vacation time and sick leave abuse. It also referred to Plaintiff's four-day absence, and stated that she "provided no legitimate excuse for these absences." Plaintiff wrote on the memorandum, "I disagree with the statement that I failed to provide legitimate reason for my absence. My

_____

he claimed that defendant also retaliated against him for exercising his First Amendment right to petition. Although the First Amendment does encompass a right to petition the government, the Court of Appeals noted that plaintiff's complaint had not referred to the exercise of that right. Bell, 275 Fed. Appx. at 160. Similarly, in this case, Plaintiff's Complaint cites to the legal source encompassing a claim for opposition retaliation, but her Complaint neglects to mention such a claim.

6

attendance 'problem' is a direct result of chronic medical condition." Based on these communications, Plaintiff now contends that a jury could find that the discharge was motivated by her opposition to the practice of disciplining her for medically-related absences.

The FMLA prohibits any employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a). "Protected activity is 'an informal or formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of the statute in question.'" Jeseritz v. Potter, 282 F.3d 542, 548 (8th Cir. 2002). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [statute]." Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1203 (10th Cir. 2008). Accordingly, "it must be possible to discern from the context of the statement that the employee opposes an unlawful employment practice." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).[6]

Thus, the protest "cannot be a general complaint of unfair treatment; the

---

[6]Curay-Cramer involved a Title VII retaliation claim. Courts within this Circuit have looked to Title VII cases for guidance in rendering FMLA decisions. See, e.g., Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 524 (W.D. Pa. 2007). The FMLA's "opposition" clause is "derived from . . . Title VII . . . and is intended to be construed in the same manner." S. Rep. No. 103-3, at 34 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 36. Courts also look to the interpretations of other statutes with similar employment-related provisions. Cf., e.g., Collier v. Target Stores Corp., No. 3-1144, 2005 U.S. Dist. LEXIS 6262 (D. Del. Apr. 13, 2005); Cohen v. Temple Physicians, Inc., 11 F. Supp. 2d 733, 736 (E.D. Pa. 1998).

7

protest must specifically oppose a practice that is made unlawful by employment discrimination laws." Paul v. UPMC Health Sys., No. 6-1565, 2009 U.S. Dist. LEXIS 19277, at *41 (W.D. Pa. Mar. 10, 2009).[7] Thus, complaints that a reprimand was undeserved, or of unfair treatment, or merely disagreeing with disciplinary practices, do not constitute protected activity. See, e.g., Kurtz v. Dep't of the Army, No. 6-1209, 2009 U.S. Dist. LEXIS 119682, at **11-12 (Aug. 5, 2009) (Title VII); Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007) (ADEA); Godon v. North Carolina Crime Control, No. 97-1458, 1998 U.S. App. LEXIS 7832, at *10 (4th Cir. April 23, 1998) (Title VII); Claudio-Gotay v. Becton Dickinson Caribe, Ltd, 375 F.3d 99, 103 (1st Cir. 2004) (FLSA).

As these principles suggest, a crucial point is the employer's awareness, or potential awareness, that the employee's opposition was directed at prohibited conduct. See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (Title VII). Section 2615(a)(2), by its terms, protects an employee from retaliation for opposing practices made unlawful under the FMLA, but not from retaliation for any other type of opposition. Cf. Yan v. Board of Regents, No. 5-C-16-C, 2005 U.S. Dist. LEXIS 19830, at *46 (W.D. Wis. Sept. 12, 2005). Thus, anti-retaliation statutes such as Section 2615 serve the purpose of giving employees the freedom to condemn or challenge their employers' illegal acts. "That

---

[7]Even conveying a concern that conduct might be illegal, without more, may be insufficient. See Gruppo v. FedEx Freight Sys., 296 Fed. Appx. 660 (10 th Cir. 2008). In Gruppo, Plaintiff allegedly was terminated in retaliation for writing a letter stating that he thought that terminating another employee was not "ethical or even legal." The court held that this communication was unprotected, because it did not "adequately inform defendants of his protected opposition under FMLA." Id. at 664.

8

purpose is hardly served by imposing sanctions upon employers who take action against employees who never communicate their concern about unlawful discrimination." Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188-89 (10th Cir. 2002).

In this case, neither the content nor context of Plaintiff's two statements convey that she intended to oppose an unlawful practice. It may be clear, as Plaintiff contends, that she opposed the decisions to impose discipline. It is well settled, however, that merely opposing discipline is not enough. While an employee need not reference the FMLA, make a formal charge, or specifically allege illegality in order to fall within the statute's "opposition" clause, she must do more than merely object to disciplinary action by reference to a medical excuse. Just as no magic words are required to invoke the FMLA, the words "protest" and "disagree," without more, are not magic words that per se invoke statutory protections.[8] One of Plaintiff's statements disagrees with a conclusion of fact – i.e., that she failed to provide sufficient excuse for her absence; and the other indicates that she objects to the discipline, based on her medical condition. There is no evidence that either Defendant or DRS inferred – and no basis by which they could reasonably have inferred -- that Plaintiff opposed or intended to oppose an unlawful practice. Plaintiff has not pointed to a single

---

[8]"The term 'oppose,' being left undefined by the statute, carries its ordinary meaning: to resist or antagonize . . .; to contend against; to confront; resist; withstand." Crawford v. Metro. Gov't of Nashville & Davidson County,      U.S.     , 129 S. Ct. 846, 850, 172 L. Ed. 2d 650 (2009). I do not question that Plaintiff opposed something in this case, as understood in common parlance; the crucial issue, however, is whether the nature of her opposition was the type contemplated by the FMLA.

case in which analogous conduct was deemed protected oppositional activity under the FMLA or any similar statute.

Additionally, neither context nor Plaintiff herself suggests that, at the time of her statements, she believed that the written warning, or statement regarding a lack of excuse for absences, were unlawful practices. Other than her conclusory and unsupported assertion, she does not suggest that she intended to protest unlawful practices. Whether an actual violation occurred may certainly be relevant to whether Plaintiff's "opposition" was protected, but it would lead to absurd results if the merits of an underlying violation were conclusive, regardless of the nature or content of the employee's communication. Plaintiff has pointed to no basis in the record to establish or infer a belief that she opposed an unlawful or discriminatory practice, or that Defendant knew or should have known the nature of her opposition.

Plaintiff urges that I rely on Sabbrese v. Lowe's Home Ctrs., Inc., 320 F. Supp. 2d 311 (W.D. Pa. 2004), to find her speech protected. In Sabbrese, the plaintiff employee, a diabetic, received a verbal warning for leaving his department unattended when he left to eat, in order to manage his medical condition. Id. at 314. After receiving the warning from his department manager, who was aware that plaintiff was diabetic, plaintiff "protested the verbal warning and stated he had to leave the store to eat because he was feeling faint and needed to eat in order to control his blood sugar levels." Id. at 314-16. Subsequently, Plaintiff complained to the store manager that he was "being discriminated against

10

because of his disability." Id. The Court treated as protected the second complaint of discrimination to the store manager, without discussing the reasons for that treatment, but did not address or rely on the plaintiff's more general "protest" to his department manager.[9] Id. at 322.

Contrary to Plaintiff's suggestion, because the Sabbrese Court did not rely on the plaintiff's initial protest, the case simply does not stand for the proposition that protesting discipline for medically-related conduct necessarily constitutes protected "opposition" under the FMLA. In this case, Plaintiff's subject statements – that she protested or disagreed with discipline, due to a medical condition – are markedly similar to the Sabbrese plaintiff's complaint to his department management, which the Sabbrese Court did not treat as protected conduct. Both statements are general protestations against discipline, due to a medical condition. The present Plaintiff's statements are, however, quite unlike the "opposition" that the Court did rely on in Sabbrese, in which the employee specifically conveyed his belief that the employer was engaging in discrimination due to disability.[10] Such conduct is more clearly aimed at an unlawful practice. Here, Plaintiff decidedly did not convey or suggest any such

---

[9]The Court noted, "[a]t issue...is whether plaintiff demonstrated a sufficient causal link between his protected activity – his complaint to store manager Williams about [the verbal warning] he received – and his subsequent dismissal." Sabbrese, 320 F. Supp. at 322.

[10]Moreover, structural aspects of the Sabbrese opinion render it unpersuasive here. The Sabbrese Court collectively discussed FMLA, PHRA, and ADA retaliation, and the defendant had conceded that plaintiff's conduct was protected under the ADA and PHRA. There is no indication that the Court or the parties separately analyzed whether the oppositional conduct was likewise protected under the FMLA. Instead, it appears that the contested issue regarding FMLA retaliation – and the focus of the Court – was whether Plaintiff had "exercised a right" under the FMLA by taking lunch breaks, rather than whether he had opposed an unlawful practice. Id. at 320-21.

11

sentiment. Under the circumstances, <u>Sabbrese</u> does not support Plaintiff's
position.

Under all of the circumstances presented here, even if Plaintiff's Complaint
properly asserted a claim for opposition retaliation, there is no genuine issue of
material fact that Plaintiff did not "oppose a practice made unlawful" under the
FMLA. Thus, she cannot maintain an action pursuant to Section 2615(a)(2),
grounded in opposition retaliation.

## III. INTEGRATED EMPLOYER STATUS

Because she cannot maintain a claim for "opposition retaliation," Plaintiff's
FMLA retaliation and interference claims both require that an employer-
employee relationship existed between her and Defendant. Thus, I must address
the parties' contentions that the County Court and Defendant should be
considered a single entity, such that they are Plaintiff's "integrated employer"
under the FMLA and its implementing regulations.

An integrated employer, often called "single employer," arises when two
entities are "so integrated that they [are], in effect, one entity." <u>Morrison v.
Magic Carpet Aviation</u>, 383 F.3d 1253, 1257 (11th Cir. 2004). "The integrated
employer test imposes equal liability upon two or more entities that, in reality,
function as a single, monolithic employer." <u>Carstetter v. Adams County Transit
Auth.</u>, 6-1993, 2008 U.S. Dist. LEXIS 51874, at *33 n. 11 (M.D. Pa. July 8, 2008). The
pertinent regulations set out two integrated employer provisions: one general,
and one geared towards public agencies. Plaintiff contends that the two tests

are to be read in conjunction, and Defendant contends that the public agency

test alone is determinative. I take note that some courts have deemed the

general test's factors inapplicable to governmental employers. E.g., Myers v.

Miss. Office of Capital Post-Conviction Counsel, No. 3:10cv53, 2010 U.S. Dist. LEXIS

53262, at **7-9 (S.D. Miss. May 28, 2010).[11]    Nevertheless, I need not determine

which approach applies, because in this case, the result is the same under both.[12]

## A. Public Agency Test

The "integrated employer test" for public agencies appears in 29 C.F.R. §

825.108(c)(1), and reads, in pertinent part, as follows: "A State or a political

subdivision of the state constitutes a single public agency, and, therefore, a

single employer for purposes of determining employee eligibility."[13]    Generally

---

[11]Within the Second Circuit, the four-factor "integrated employment" test, as applied under Title VII, has been limited to two corporate contexts: "first, where the plaintiff is an employee of a wholly-owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity." Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 378 (2d Cir. 2006). The court further stated, "[e]xtending this theory to cases involving the complex relations between levels of government would be impracticable...." Id.

[12]I note, too, that the integrated employer test overlaps the joint employer test, which was discussed in the April 23 Opinion.

[13]Section 825.108(c)(1) has since been amended, in such a way that could affect the analysis in this case. The parties were given the opportunity to brief the applicability of the amendment, and agree that it is not retroactive.

As amended, the public agency test, 29 C.F.R. § 825.108(c)(1), reads as follows:

A State or a political subdivision of a State constitutes a single public agency and, therefore, a single employer for purposes of determining employee eligibility. For example, a State is a single employer; a county is a single employer; a city or town is a single employer. Whether two agencies of the same State or local government constitute the same public agency can only be determined on a case-by-case basis. One factor that would support a conclusion that two agencies are separate is whether they are treated separately for statistical purposes in the Census of Governments issued by the Bureau of the Census, U.S. Department of Commerce.

speaking, an "eligible employee" is, in part, one who has "been employed [for the requisite time period]...by" an employer with the requisite number of employees; and an "employer" is one who employs the requisite number of employees, for the requisite number of workweeks. 29 U.S.C. § 2611.

Plaintiff contends that the "public agency" test is inapplicable here, because it is to be used only "for purposes of determining employee eligibility," which in turn relates to numerosity requirements under the FMLA. The concepts of "employee eligibility" and "employer coverage" are easily conflated, perhaps because they are intertwined. At the risk of semantic diversion, in this case it is not disputed that Plaintiff is, in the abstract, an eligible employee of _an_ employer; it is likewise not disputed that Defendant may be a covered employer of _an_ employee. The entire present inquiry is aimed at determining whether Defendant and the County Court can be considered a single entity, such that Defendant can be considered Plaintiff's employer. In other words, the issue is whether Plaintiff is an eligible employee vis-a-vis this particular Defendant. Taking the question of "eligibility" in conjunction with the interference and retaliation provisions on which her claims are based, Plaintiff is not eligible for the protection of those provisions, as against this Defendant, unless she was employed by this Defendant. Hence, the question of employee eligibility is not irrelevant, but instead – as a practical matter -- lies at the core of this case.[14]

---

[14]Both the general and public agency integrated employer tests appear to be targeted to numerosity requirements, but have also been applied to allow the imposition of liability. "[T]he integrated employer test is a mechanism to ensure that the appropriate employees are aggregated for the numerosity test of the FMLA." Grace v. USCAR, 521 F.3d 655, 664 (6th Cir. Mich. 2008). The

14

The "public agency" test reads, in pertinent part, as follows:

Where there is any question about whether a public entity is a public agency, as distinguished form a part of another public agency, the U.S. Bureau of the Census "Census of Governments" will be determinative....

29 C.F.R. 825.108(c)(1).

To determine whether there is "any question," a court should examine state law. Rollins v. Wilson County Gov't, 154 F. 3d 626, 629 (9th Cir. 1998); Fain v. Wayne County Auditor's Office, 388 F.3d 257 (7th Cir. 2004). Within this Circuit, the public agency test – and its ultimate reliance on state law -- has been used as the sole basis for determining whether two public entities functioned as an integrated employer. Clements v. Hous. Auth., 532 F. Supp. 2d 700 (D.N.J. 2007).

In this case, there is no question that state law treats Defendant and the County Court as separate and distinct entities, and Plaintiff does not contend otherwise. "In Pennsylvania, the courts are the employers of judicial personnel. The domestic relations section is a statutorily prescribed division of the Court of Common Pleas, and is not a County agency." Walters v. Washington County, No. 6-1355, 2009 U.S. Dist. LEXIS 23739, at **27-28 (W.D. Pa. Mar. 23, 2009); see also 42 Pa. C.S.A. § 961. The Court of Common Pleas is an instrumentality of the Commonwealth, and an entity of the Unified Judicial System of Pennsylvania. Pa. Const., Art. V §§ 1, 5; 42 Pa. C.S. § 102. The County, in contrast, is a political

---

"integrated employer" test is directed toward ensuring that a defendant has not structured itself to avoid reaching the fifty-employee threshold for FMLA responsibility. Cardinale v. Southern Homes of Polk Cty., No. 6-1295, 2008 U.S. Dist. LEXIS 21716, at *30 (M.D. Fla. Mar. 19, 2008). But see Torres-Negron v. Merck & Co., 488 F.3d 34, 42 n. 7 (1st Cir. 2007 ) (discussing, in Title VII context, that integrated employer test imposes shared liability).

subdivision created by the state legislature. See, e.g., Tilli v. County of Northampton, 370 F. Supp. 459 (E.D. Pa. 1974). Thus, under the public agency test, the County Court and Defendant are not a single, integrated employer, and Plaintiff's claims fail.

However, in other contexts, courts within this Circuit have been careful to observe that "employment" under state law is not determinative of "employment" under a federal statute that sets forth its own definition of "employment." Husick v. Allegheny County, No. 7-1175, 2010 U.S. Dist. LEXIS 46022, at **13-14 (W.D. Pa. May 10. 2010). According to Rollins and Fain, the FMLA's public agency integrated employer test implicitly refers us back to state law, thus, in effect, adopting state law as the FMLA definition. That approach, although addressed by district courts within this Circuit, has not been adopted by our Court of Appeals. Under these circumstances, and at Plaintiff's behest, I will also consider the more general FMLA test.

### B. General Test

Under the FMLA, "a determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality." 29 C.F.R. § 825.104(c)(2). In viewing that relationship, the Court is to consider several factors, including common management; interrelation between operations; centralized control of labor relations; and degree of common ownership/financial control. Id. When applying this test, "not every factor need

16

be present, and no single factor is controlling." Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1341 n.5 (11th Cir. 1999).

## 1. Centralized Control of Labor Relations

I first assess centralized control of labor relations, as it is often deemed the primary consideration, and tends to overlap the other factors. See, e.g., Hukill v. Auto Care, Inc., 192 F. 3d 437, 443 (4th Cir. 1999).[15] This factor may take into account elements such as decisionmaking power as to the decisions at issue in the case; control over work schedules; and the power to hire, fire, and supervise employees. Id. at 445. Control of day-to-day employment decisions is also relevant, as are tasks such as "handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." Velez v. Novartis Pharms. Corp., 244 F.R.D. 243, 250 (S.D.N.Y. 2007); see also Cruz-Lovo v. Ryder Sys., 298 F. Supp. 2d 1248, 1254 (S.D. Fla. 2003).

With respect to relevant decisionmaking power, Plaintiff points to Pearson v. Component Tech. Corp., 247 F. 3d 471 (3d Cir. 2001), for the principle that the "control of labor relations" analysis may be satisfied if the "parent was specifically responsible for the labor practice at issue in the litigation." Because Defendant was responsible for handling FMLA processes and issues, she suggests, and this is an FMLA case, the question resolves in her favor. In particular, Plaintiff argues that Defendant was responsible for "implementation of the FMLA policy; the

---

[15]As a linguistic matter, the term "labor relations" conjures the numerous interchanges between employer and employee, while "labor operations" calls to mind the day-to-day functioning or performance of the employer's workforce. Throughout this Opinion, I refer to the terms "operations" and "relations" with those connotations in mind.

17

decision to approve or deny her FMLA requests; and all communications regarding the FMLA."

However, Plaintiff's discharge, rather than the administration of her FMLA benefits, is the "labor practice at issue" in her retaliation claim and part of her interference claim.[16] Defendant was consulted about Plaintiff's discharge, and did not approve certain absences as FMLA leave, which may have impacted DRS' decision to terminate her; it is undisputed, however, that Defendant did not make the decision to terminate her. Instead, Defendant responded to County Court personnel's request for advice, but County Court and DRS personnel made the decision to terminate Plaintiff.[17] There is no evidence that the President Judge of the County Court, who was told that the Deputy Court Administrator was going to fire Plaintiff, and apparently assented, was provided with any information from the County or its HR.[18] Indirect responsibility is not enough:

---

[16]Plaintiff's interference claim avers, in part, that the discharge interfered with her FMLA rights because she was entitled to be restored to her own or a comparable position, and also that the discharge interfered with her future exercise of FMLA rights.

[17]As the Deputy Court Administrator stated, "I said [to HR personnel] that I had received a recommendation from [DRS supervisors] that Ms. Braden had been terminated," and "I asked him for his advice about this."

[18]This fact, inter alia, distinguishes the present case from Walters v. Washington County, 6-1355 (W.D. Pa. Mar. 23, 2009). That case, which involved ADEA and due process claims, also related to the relationship between county court and county, but demonstrated a level of HR involvement that is absent here. For example, in Walters, county HR conducted an investigation into allegations against plaintiff, and then wrote a report regarding the investigation that recommended discipline up to and including termination. County court personnel also offered the opinion, based in part on the HR investigation, that termination was appropriate. The President Judge of the county court later, "based, in part, on the HR Report," decided to fire plaintiff. Additionally, plaintiff and other employees believed that they were entitled to participate in the county's grievance procedure. Finally, Walters did not apply the "integrated employer" test, but instead a hybrid "right to control" and "economic realities test." For all of these reasons, Walters does not mandate the same outcome in this case.

18

Evidence that one entity had a voice in certain employment decisions is insufficient to demonstrate that it controlled those decisions. Swallows v. Barnes & Noble Book Stores, 128 F.3d 990, 995 (6th Cir. 1997). As regards Plaintiff's discharge, one could not reasonably conclude that Defendant commanded or controlled that practice. Thus, to that extent, the "control of labor relations" factor does not per se point to integrated employment.[19]

One aspect of Plaintiff's interference claim, however, does not rest on her discharge. Instead, she alleges that Defendant treated her leave and absences under its "attendance policy," in violation of the FMLA. To the extent that this encompasses Defendant's HR decision to subtract certain absences from her FMLA leave time, and DRS' or the County Court's reliance on Defendant's advice regarding the FMLA, Defendant bears specific responsibility for the challenged practice.

To the extent that it encompasses the administration of DRS and County Court attendance policies, however, Defendant bears no responsibility. It is undisputed that DRS vacation and sick leave policies were DRS' or the County Court's own; the County Court or DRS adopted certain of Defendant's policies, but there is no evidence that this was required; and disciplinary and related measures taken with respect to Plaintiff's purported attendance issues were determined and administered, even if with Defendant's ad- or post-hoc input, by

---

[19]In addition, Pearson dealt with the issue in the context of deciding whether, in a parent-subsidiary relationship, the "parent has sufficiently overwhelmed its subsidiary in taking the challenged action." Pearson, 247 F.3d at 487. In this case, the County and the Court are not structured in that type of vertical relationship.

County Court and DRS personnel. Thus, to the extent that Defendant can be viewed as "specifically responsible" for its treatment of Plaintiff's absences with respect to the calculation of FMLA leave, "control of labor relations" may weigh in Plaintiff's favor. To the extent that DRS was responsible for its own policies, however, this factor weighs against Plaintiff. Because these possibilities are at odds, and because Defendant's responsibility extends to a relatively small portion of the labor practice "at issue," Pearson does not end the analysis of this factor.

Additionally, the legal backdrop of this case undermines the proposition that other commonalities – such as the issuance of paychecks, maintaining files, and sharing forms or letterhead – suggests centralized control of labor relations. In Pennsylvania, individual counties are required by law to "establish and maintain on their respective books" accounts "to be known as the judicial and related account[s]," in order to pay, inter alia, the salaries of judicial employees working in the counties. 42 Pa. C.S. § 3541. Thus, a county "is compelled by state law to fund [court employees'] positions, and cannot avoid doing so even if it wanted to." LeGrand v. Lowery, No. 93-1980 (M.D. Pa. May 3, 1994). The relationship between counties and county judicial systems has been described as follows:

> In County of Allegheny v. Pennsylvania, 517 Pa. 65, 534 A.2d 760, 765 (Pa. 1987), the Pennsylvania Supreme Court found the statutory provision providing for county-based funding of the individual "courts of common pleas" to be inconsistent with the Pennsylvania Constitution's mandate that the Pennsylvania Judiciary be "unified." The judgment was stayed in order to provide the Pennsylvania Legislature with an opportunity to fund the Pennsylvania Judiciary on a statewide basis, thereby leaving the reality of county-based funding in place for the time being. ...Therefore, judicial

20

employees...continued to be paid by their respective counties even though they were not regarded as county employees under Pennsylvania law.

Husick, 2010 U.S. Dist. LEXIS 46022, at *11 (citation omitted).

In this case, Defendant approved, but there is no evidence that it determined, Plaintiff's salary increases.[20] There is no suggestion that Defendant could withhold funding. As a corollary, Defendant's funding authority is not one of unchecked discretion; the County Court has the inherent power to compel Defendant to provide necessary funding. E.g., Lavelle v. Koch, 532 Pa. 631, 636 (1992). Assertedly because of the benefits and payroll that it administers, Defendant maintains files on court employees. The County Court, however, also maintains separate files on employees. As regards day-to-day decisionmaking, there is no evidence that Plaintiff or her supervisors reported to, or received direction or supervision from, Defendant; instead, the chain of command ended at the President Judge of the County Court. Only DRS personnel gave Plaintiff her day-to-day work assignments.

Likewise, there is no evidence of any common managerial personnel between the Court or DRS and the County.[21] There is no evidence that Defendant approved personnel reports or performance appraisals, or participated in the creation of such documents; instead, only DRS personnel

---

[20]This is consistent with Pennsylvania statute, which states that agencies or units of the judicial system may "appoint and fix the compensation and duties of necessary central staff and personal staff." 42 Pa.C.S. 2301. "Central staff" includes all individuals employed in the business of the judicial system, other than certain specified individuals. 42 Pa. C.S. 102.

[21]Indeed, the County Court is statutorily granted "general supervisory and administrative authority over the personnel of the (judicial) system." 42 Pa.C.S.A. §1724.

21

evaluated Plaintiff's job performance. Defendant's HR participated in Plaintiff's job interview, but there is no evidence that Defendant had any input into the decision to hire her. Plaintiff also cites to the fact that DRS sent her to be examined by a doctor who had a contract with Defendant, and later had a conference call with that doctor. This is indicative of a connection between the two entities, but I fail to see how it suggests that "control of labor relations" or operations is centralized. Commonalities that do not stem from common management and operations, but instead from some other source – such as economic efficiency, for example – do not "collapse the distinct...identity of each entity," and thus may be unpersuasive. See Englehardt v. S.P. Richards Co., Inc., 472 F.3d 1, 8 (1st Cir. 2006).[22] Most of the commonalities here naturally arise from the Defendant's status as a funding entity. In sum, viewing the facts in a light most favorable to Plaintiff, one cannot reasonably conclude that control of the County Court's and Defendant's labor relations was "centralized." "To the contrary, [Defendant] has sole authority to hire, fire, and supervise its employees." See Cruz-Lovo, 298 F. Supp. at 1252. Thus, the few commonalities pertinent to this factor are overwhelmed, and this consideration weighs against integration.

### 2. Interrelation of operations

The second factor, interrelation of operations, is similar to the first, as it

---

[22]The law requires that counties maintain a judicial account, from which they must pay salaries, fees, and expenses of "other system and related personnel which by statute are required to be paid by the political subdivision." 42 Pa. C.S. § 3544(a).

takes into account items such as common offices, record keeping, bank accounts, and equipment. Swallows, 128 F.3d at 993. Plaintiff asserts that interrelation of operations weighs in her favor, because of like personnel policies, her receipt of sexual harassment, Hepatitis B, and domestic violence training from the Defendant, her receipt and use of various forms bearing Defendant's name, and the HR support provided by Defendant.

As discussed above, Defendant is required by law to administer payroll to some County Court employees, and is required to do so via judicial accounts. As a funding body, it also administers benefits to County Court employees. There is no suggestion of shared offices or equipment.[23]  As discussed above, both Defendant and the County Court maintained files on Court employees.  The County Court adopted certain of Defendant's policies, but there is no suggestion that they were required to do so, or that Defendant could have prevented them from adopting different policies. There is no evidence of common management – "at least insofar as the core responsibilities and operations of each business." Grace v. USCAR, 521 F. 3d 655, 665 (6th Cir. 2008).

Moreover, there is no suggestion that Defendant performs work similar to

---

[23]The County owns the building in which the Court operates.  Again, I point to the possible involvement of Pennsylvania's statutory scheme:

Except as otherwise provided by statute, each county shall continue to furnish to the court of common pleas and community court embracing the county, to the minor judiciary established for the county and to all personnel of the system, including central staff entitled thereto, located within the county, all necessary accommodations, goods and services which by law have heretofore been furnished by the county.

42 Pa.C.S.A. § 3722.

that performed by DRS or the County Court. There is no suggestion that Defendant maintained any control over Plaintiff's work schedules or working conditions.[24] The training to which Plaintiff points is not related to the operations of DRS or the Court, or to their employees' job functions. Finally, DRS and the County Court made its own decisions with respect to labor relations decisions, including hiring, firing, supervising, and work assignments. Under these circumstances, administration of benefits and payroll, voluntary adoption of certain policies, and shared human resources are insufficient to impose integrated employer status. E.g., Englehardt, at *6; see also Cruz-Lovo, 298 F. Supp. 2d at 1254. Certainly, the two entities are interrelated, on an administrative level; their operations, however, are not. These facts weigh against a finding that Defendant and DRS had interrelated operations, and thus against a finding of integrated employment.

### 3. Common Management

Next, I reach the question of whether, or to what extent, the entities shared common management. Again, this factor looks to "who had control[] of the day-to-day operations of the business," and "who had the authority to hire and fire employees." Hukill, 192 F.3d at 443. It is undisputed, in this case, that DRS personnel made day-to-day decisions pertaining to Plaintiff, and had the authority to decide and effectuate, and did decide and effectuate, her hiring

---

[24]Plaintiff states that she was not managed by a judge. DRS, however, was a division of the Court, and she was managed by DRS personnel.

and firing. There is no evidence that Defendant played any role in the day-to-
day decisions pertaining to Plaintiff; there is no evidence that its involvement in
her hiring and firing were conclusive, authoritative, extensive, or required. The
fact that Plaintiff's supervisors were paid by Defendant, and the use of common
forms, doesn't suggest common management, for reasons previously discussed.
In sum, this factor weighs against a finding of integration.

### 4. Degree of common ownership or financial control

For apparent reasons, this factor is not readily applicable to public entities.
Some courts have determined that it is not applicable at all in the context of
public entities, because "common ownership and financial control...is clearly
irrelevant to a case involving governmental entities, which do not issue stock and
are not owned by private parties." Bristol v. Bd. of County Comm'rs, 312 F.3d
1213, 1220 (10th Cir. 2002); see also Lyes, 166 F. 3d at 1343. Here, Defendant and
the County Court shared coordinated benefits and payroll, and Defendant owned
the property where Plaintiff worked. On the other hand, the Defendant's status
as a funding agency is legally mandated, and there is no evidence that its
budgetary authority could be used to influence employment decisions. See, e.g.,
Bristol, 312 F. 3d at 1218. In that vein, there is no evidence that Defendant held
or exerted power over funding that would be meaningful in this context, with
respect to County Court employees, as opposed to ministerial or administrative-
type power. Thus, to the extent applicable, this factor is neutral at best.

### 5. Totality of the Relationship

Finally, the applicable test requires that I review the relationship between the Defendant and the Court in its totality. "[W]hen the employers in question are government entities, additional criteria come into play." Riley v. County of Pike, 761 F. Supp. 74, 76 (C.D. Ill. 1991). That totality, therefore, includes the fact that the entities are considered separate entities under state law, and the fact that state law dictates that Defendant fund and supply the County Court.[25] Considered against that legal background, the facts of record paint the Defendant as ministerially or administratively related to the County Court, but not in a position of decisionmaking authority, management, or control.

Where sufficient evidence of integrated employment has been found, there were far more – or far more significant – commonalities and interrelations between the entities at issue. See, e.g., Edwards v. Branson Devel., LLC, 9-3040, 2010 U.S. Dist. LEXIS 45442 (W.D. mi. May 10, 2010) (inter alia, entities shared president and secretary, and same president managed holding company that oversaw entities). In contrast, in cases where shared characteristics were limited to those things administrative, integrated employment has been found lacking.[26]

---

[25]Lack of voluntariness in funding is not the decisive issue; it is that the mandatory funding does not bring with it the measure of authority typically associated with control of the pursestrings.

[26]For example, in Englehardt v. S.P. Richards Co., Inc., 472 F.3d 1 (1st Cir. 2006), plaintiff's immediate employer adopted some of a second entity's employment policies, and the second entity administered employee benefits programs for the first. Id. at 5. The second entity processed the other's paychecks, and various employment documents bore both entities' logos, or just the logo of the second entity. Id. The entities, however, shared no common manager, and no manager of one answered to another; the companies shared independent directors, separate headquarters and human resources, and recordkeeping, as well as separate worksites with distinct functions. Id. at 6.

Similarly, in Cruz-Lovo v. Ryder Sys., 298 F. Supp. 2d 1248, 1254 (2003), one entity purchased services – including payroll processing, employee benefits, ad hoc human resources, and office

26

This case, in its entirety, is materially closer to the latter. The independence of the County Court and Defendant is more than nominal, and more than a statutory technicality. Taking the entire relationship into account, the balance tips heavily away from integrated employer status. Under applicable standards, and viewing the facts in a light most favorable to the Plaintiff, a reasonable jury could not conclude that the Defendant and County Court functioned as single, monolithic employer.

## CONCLUSION

In sum, Plaintiff's claims require that Defendant have been her employer at pertinent times. Under the public agency integrated employer test, Defendant was not Plaintiff's employer. Under the general integrated employer test, the weight of the enumerated factors rests against integrated employer status; additional considerations, relevant to the total relationship between the parties, also weigh heavily against integration. There is no genuine issue of material fact that Defendant was not Plaintiff's integrated employer. Thus, Defendant is entitled to judgment on Plaintiff's claims against it.

An appropriate Order follows.

---

space – from another entity. The court found these facts did not favor an integrated employment relationship, in part because the defendant did not gain control of labor relations as a result of its involvement. Id.

27

## ORDER OF COURT

AND NOW, this 2nd day of September, 2010, it is hereby ORDERED,

ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment is

GRANTED.    The Clerk of Courts shall mark this matter CLOSED forthwith.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, United States District Court